**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| United States of America, | Case No. 22-cr-166 (JRT/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Nicholas Antwain Dancy, | |
| Defendant. | |

---

## INTRODUCTION

Defendant Nicholas Antwain Dancy (Dancy) was charged with three counts of interference with commerce by robbery, one count of carrying a firearm during and in relation to a crime of violence, and one count of being a felon in possession of a firearm. Dancy moves to suppress all evidence gathered during the execution of the nighttime search warrant, arguing law enforcement actually conducted the search prior to the warrant's issuance. Dkt. No. 56; Dkt. No. 46. Dancy contends law enforcement gathered evidence during a pre-warrant entry they subsequently relied upon to secure the search warrant. *Id.* Dancy also argues probable cause does not exist within the four corners of the warrant. *Id.* Additionally, Dancy requests a *Franks* hearing. *Id.* For the reasons discussed below, this Court recommends Dancy's motions be denied.

## FINDINGS OF FACT

On May 27, 2022 an armed robbery was reported to law enforcement at Towfiq Grocery, located at 519 University Avenue West in Saint Paul. Ex. 1 at 139. Officers were dispatched to the scene around 6:50 pm. *Id.* A Towfiq Grocery store employee, F.F.H., told officers a black male customer (the suspect) had entered the store and asked for two Tylenol packs. *Id.* F.H.H. stated he started to ring up the Tylenol, and

when he looked back up, the suspect was pointing a black handgun at him and demanding money from the register. *Id.* F.F.H. gave the suspect $240 from the register. *Id.* The suspect then backed out of the store and left the scene. *Id.*

A.N.I., a witness who spoke to law enforcement, stated s/he had seen the suspect come through a hole in the wooden fence adjacent to an alley north of Towfiq Grocery, enter the store, and then exit the store with "lots of money in his hands" before leaving through the same hole in the fence. Ex. 1 at 139-140.

Law enforcement reviewed video of the robbery at Towfiq Grocery. *Id.* at 139. In the affidavit supporting the search warrant, the footage is described as follows. [1] *Id.* A black male entered the store at 6:45 pm wearing a covid mask over his mouth and nose. *Id.* The man had long dark dreadlocks with light ends that went to mid-chest, a widow's peak, and distinct eyebrows that only extended halfway over the suspect's eyes. *Id.* The suspect was wearing a green T-shirt, dark jeans, and dark shoes with blue on the back and sides. *Id.* The video shows the suspect pulled a dark firearm from the front of his pants with his right hand. *Id.* After appearing to attempt to figure out why the slide on the gun was locked open, the suspect pointed the gun at F.F.H. *Id.* The suspect continued to point the gun at F.F.H. and extended his left arm straight toward F.F.H., with his hand outstretched. *Id.* F.F.H. can be seen taking cash from the register and placing it in the suspect's outstretched left hand. *Id.* The suspect then backed out of the store and left at 6:47 pm, appearing to exit right from the entrance. *Id.*

Sergeant Onnen with the St. Paul Robbery Homicide Unit reviewed video from Quality Childcare's external surveillance cameras, located next to Towfiq Grocery. Ex. 1

---

[1] The footage of the robbery has not been provided to the Court as an exhibit, but because the characterization of the footage has not been challenged, the Court adopts it as fact.

at 140. This video shows a red two-door Monte Carlo arrive at 6:44 pm before backing into an area out of view on the north side of the building. *Id.* at 140-141. Four minutes later, the Monte Carlo can be seen leaving at 6:48 pm, travelling east in the alley before turning north on Mackubin Street. *Id.* at 141. The footage captured the rear Minnesota license plate, ELV923. *Id.* A search of Minnesota's Driver and Vehicle Services database revealed this license plate was associated with a 2004 red Monte Carlo coupe registered to Dancy. *Id.*

Law enforcement compared Dancy's driver's license photo, his on-file booking photo, and the Towfiq robbery footage and identified the same half-length eyebrows, long dreads that faded to lighter ends, and receding widow's peak hairline. *Id.* Dancy's arrest record noted he has a tattoo on his left forearm, near the bend of his elbow, of a heart with writing through its center. *Id.* A heart tattoo with writing across the center can be seen on the suspect's left arm in the robbery footage. *Id.* Additionally, during a routine traffic stop in August 2021, Dancy was stopped while driving the red Monte Carlo with license plate ELV923 and was observed to have the same long dark dreads with light ends. *Id.*

The affidavit contained numerous facts linking Dancy to 597 Blair Avenue # 3. The address on Dancy's driver's license is 597 Blair Avenue # 3, the same address on file for his probation. *Id.* Law enforcement license plate readers also showed nine license plate reader "hits" placing the red Monte Carlo parked near 597 Blair Ave, with the most recent "hit" on the date of the first robbery, June 1, 2022. *Id.*

The affidavit also included information on a second armed robbery at Global Food and Mid-Market ("Global Food") in St. Paul around 10:28 pm on June 5, 2022. *Id.* A.A.H., the employee at the register at Global Food during the robbery, stated a black

male wearing a black puffy jacket with a hood, black pants, and a black mask came into the store from the north entrance, approached the counter, and pulled a black handgun from his waistband. *Id.* at 142. The suspect pointed the handgun at A.A.H. and demanded money. *Id.* The suspect stole approximately $500 in cash before leaving through the north entrance. *Id.* A.M.A. and H.M.J. were also in the store and witnessed the robbery. *Id.* They told law enforcement they saw the suspect get into a red Monte Carlo and drive away. *Id.* at 141. H.M.J. and A.M.A. followed the suspect in their own vehicle until the red Monte Carlo (with MN plates ELV923) parked in front of 597 Blair Avenue. *Id.* H.M.J. and A.M.A. watched the black male wearing a black jacket and black pants enter 597 Blair Avenue. *Id.* at 141-142. A.M.A. and H.M.J. then remained at the scene until law enforcement arrived, reporting they had not seen the suspect leave the residence. *Id.* at 141.

Based upon the foregoing facts, law enforcement electronically applied for a nighttime search warrant at 12:22 am on June 6, 2022, to search the 597 Blair Avenue #3 residence. *Id.* at 143. Ramsey County District Court Judge Charles signed and issued the warrant at 12:27 am. *Id.* at 137. The warrant authorized seizure of, among other items, firearms, ammunition, indicia of firearms, dark shoes with blue on the sides, a green t-shirt, cell phones, documents relating to occupancy of the residence, documents showing ownership of firearms, and U.S. currency in the form of dollar bills. *Id.* at 135. The Government asserts officers did not enter the residence until after the search warrant was issued. Dkt. No. 58 at 7-8.

During the June 6 search, officers recovered a Taurus 9 millimeter and 9 millimeter live ammo, Dancy's Minnesota ID, and two cell phones. Ex. 1 at 134. They

also recovered blue and black Air Jordans from Dancy's bedroom and a green t-shirt, consistent with the outfit worn by the suspect during the first robbery. *Id.*

## CONCLUSIONS OF LAW

### I. Motion to Suppress Evidence

Dancy moves to suppress evidence seized during the search, alleging law enforcement illegally conducted a search before the warrant was issued and relied upon information gathered during the alleged pre-warrant search to secure the warrant. Dancy also makes a four corners challenge to the warrant.

#### A. Four Corners Challenge

Dancy argues the warrant affidavit did not contain sufficient facts to establish probable cause for the warrant. A search warrant is supported by probable cause if, "based on the totality of the circumstances set forth in the application and affidavits, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Johnson*, 528 F.3d 575, 579 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The standard is 'not a high bar,' and it 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Edwards*, 891 F.3d 708, 711 (8th Cir. 2018 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)).

In reviewing a warrant, "great deference" is to be accorded to the issuing judge's determination of probable cause. *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008); *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant." *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009) (internal quotations omitted). "[T]he duty of a reviewing court is simply to

5

ensure that the [issuing court] had a 'substantial basis . . . for concluding' that probable cause existed." *Gates*, 462 U.S. at 238-39.

Dancy's four corners challenge fails, as the affidavit established a substantial basis to believe evidence of the robberies would be found at 597 Blair Avenue # 3. The affidavit stated the red Monte Carlo, with MN plates ELV923, was present at both robberies and is registered to Dancy, with 597 Blair Avenue # 3 listed as the address on the vehicle registration. Witnesses saw the robber flee the June 5 robbery scene, get into the red Monte Carlo, drive, park in front of 597 Blair Avenue, get out of the car and go inside.

Dancy's argument relies on isolated assertions made without reference to the totality of the circumstances, including that no one saw the suspect get in and out of the red Monte Carlo at the first robbery. This assertion fails to account for numerous facts linking Dancy, the Monte Carlo, and the first robbery. Dancy does not address the vehicle registration that documents his ownership of the red Monte Carlo with MN plates ELV923, the traffic stop during which he was driving the Monte Carlo, or the fact that video footage places the Monte Carlo in the immediate vicinity of Towfiq grocery while the robbery was being perpetrated by a suspect who shares distinct identifying characteristics with Dancy. Dancy also does not account for the witness who saw the suspect enter Towfiq, leave holding cash, and then go through a hole in a fence to the north of Towfiq, near the north side of the building where the Monte Carlo went beyond view of the surveillance cameras.

Dancy further argues the warrant affidavit did not allege sufficient identifying facts. Specifically, Dancy asserts the suspect cannot be identified in footage of the first robbery because the suspect's features are obscured by a covid mask and notes

6

eyewitnesses did not identify him as the robber. Dancy does not address that footage of the first robbery shows the robber had visible identifying features, including long dark dreads with light ends, a distinctive heart tattoo on his left forearm, and half-length eyebrows, all of which are consistent with Dancy's photo ID and booking images. Dancy also does not account for the fact that eyewitnesses to the second robbery followed the robber, who was driving the red Monte Carlo registered to Dancy, from the scene to 597 Blair Avenue, where Dancy lives.

Additionally, Dancy argues it is unclear if law enforcement checked whether he had a roommate, which is irrelevant. *See United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (the nexus required as part of this probable cause analysis is between the contraband being sought and the place to be searched, not the suspect). Accordingly, Dancy's four-corners challenge to the warrant fails, because the affidavit established a substantial basis to believe evidence of the robberies would be found at 597 Blair Avenue # 3.

### B.  Warrantless Entry

Dancy contends that law enforcement illegally searched his residence at 597 Blair Ave # 3 late at night on June 5, before the search warrant was issued at 12:27 am on June 6. Dancy argues all evidence should be suppressed because "he does not believe officers had sufficient information tying him to the apartment upon arrival" and "only gained this information" after their unlawful warrantless entry.

The proponent of a motion to suppress bears the burden of establishing their Fourth Amendment rights were violated. *See United States v. Kouayara*, 189 F. Supp. 3d 835, 840 (D. Minn. 2016). It has been established that, even in cases where law enforcement illegally entered a residence, evidence gathered is only subject to

7

suppression if it was "derived from or related in any way to the initial entry." *Hudson v. Michigan*, 547 U.S. 586, 600 (2006) (quoting *Segura v. United States*, 468 U.S. 796 (1984). Dancy therefore bears the burden first to show the alleged illegal entry occurred prior to the search warrant's execution, and second, that law enforcement relied upon information gathered during the alleged pre-warrant entry to secure the search warrant.

Dancy has failed to meet his burden to show the alleged illegal entry occurred. The entirety of Dancy's support for his argument law enforcement entered his residence prior to the search warrant's execution is set forth in his brief:[2]

> Dancy asks the Court to hold a hearing on his claims pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In support of his allegation, Dancy points to photos in the discovery file that show a microwave on a kitchen countertop (BATES # 242, 243). The kitchen appears to already have been searched, and the microwave displays the time as 10:24 or 10:25.

Dkt. No. 46 at 2. Dancy does not clarify what evidence law enforcement purportedly gathered during the alleged pre-warrant search of his residence that they later relied on to apply for the search warrant. *Id.*

In its brief, the Government included a photograph of a microwave, which is presumably an enlarged and cropped version of the photo from the discovery file because the rest of the kitchen (which Dancy alleged was pictured) is not visible. Dkt. No. 58 at 7. The image plainly shows the microwave clock reads "0:24" rather than "10:24," as alleged by Dancy. *Id.* The Government also included in its brief a freeze-frame of body camera footage allegedly taken while officers went upstairs at Dancy's residence before executing the search warrant. Dkt. No. 51 at 8. The timestamp on this image reads June 6, 2022 at 12:32 am, five minutes after the warrant was signed. *Id.*

---

[2] The Court notes that neither party has supported their arguments with admissible evidence in the form of exhibits, supporting affidavits, or testimony. Dancy refers to "the discovery file" to support his argument, but this file is not in evidence in the record.

8

Dancy has failed to provide any evidence to support his arguments, offering only unsubstantiated allegations and citations to materials not in the record. This is insufficient to meet his burden to show the alleged pre-warrant search occurred. Dancy also failed to specify the evidence law enforcement purportedly gathered and then relied upon to secure the search warrant, which, as previously noted, has ample evidence from independent sources sufficient to establish probable cause. Thus, not only has Dancy failed to meet his burden, the face of the warrant itself belies Dancy's story. Finally, the Government has provided material that contradicts Dancy's unsupported assertion that a pre-warrant search occurred. Because Dancy has failed to meet his burden to prove his Fourth Amendment rights were violated, his motion to suppress evidence should be denied.

## II.   *Franks* Hearing

Dancy requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), asserting the warrant application contained materially false statements relied upon to obtain the search warrant. Dkt. No. 56 at 1. Dancy does not identify the alleged materially false statements. *Id.*

"A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Conant*, 799 F.3d 1195, 1199 (8th Cir. 2015) (quoting *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001)). To be granted a *Franks* hearing, Dancy must make "a substantial preliminary showing" that the affiant, at a minimum, recklessly disregarded the truth through a false statement or omission, and that the false statement or omission "is necessary to the finding of probable cause." *Franks*, 438 U.S., at 155-56. Dancy

9

must "offer specific allegations along with supporting affidavits or similarly reliable statements" to make this preliminary showing. *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015). "A *Franks* hearing must be denied unless the defendant makes a strong initial showing of deliberate falsehood or reckless disregard for the truth." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010).

Dancy has not alleged any deliberate falsehood or reckless disregard for the truth and has failed to identify any specific statements (or omissions) in the affidavit that he is challenging. He likewise has not offered any affidavits or similarly reliable statements containing evidence of a deliberate falsehood or reckless disregard for the truth. To the extent his *Franks* request is based upon his claim of warrantless entry, that claim is without merit. Because Dancy has failed to make the requisite strong initial showing for a *Franks* hearing, his motion should be denied.

## RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS THAT:

1.     Defendant's Amended Motion to Suppress Evidence Obtained as the Result of a Search and Seizure [Dkt. No. 46] be DENIED.

2.     Defendant's Request for a Hearing Pursuant to *Franks v. Delaware* [Dkt. No. 56] be DENIED.

Dated: March 15, 2023                               ___s/David T. Schultz___
                                                                DAVID T. SCHULTZ
                                                                U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).