UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Criminal No. 22-166 (JRT/DTS) |
| v. | MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION |
| NICHOLAS ANTWAIN DANCY, | |
| Defendant. | |

---

Ruth Shnider, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Robert A. Lengeling, **BEITO & LENGELING, PA**, 310 Fourth Avenue South, Suite 1050, Minneapolis, MN 55415, for Defendant.

Defendant Nicholas Antwain Dancy is charged with three counts of interference with commerce by robbery, one count of carrying a firearm during and in relation to a crime of violence, and one count of being a felon in possession of a firearm. Dancy filed a motion to suppress all evidence gathered during the execution of a nighttime search warrant, arguing that it was obtained after officers began conducting a search and that evidence gathered during the pre-warrant entry was relied on to secure the search warrant. Dancy further argues that probable cause does not exist within the four corners of the search warrant because it contains false information and was obtained after the fact. Lastly, Dancy requests a *Franks* hearing on his claims.

Magistrate Judge David T. Schultz held a hearing on the matter and issued a Report and Recommendation ("R&R") recommending that motion and request be denied in full. Because the search warrant is supported by probable cause, Dancy has failed to meet his burden to show that an illegal entry occurred. Further, Dancy does not make the requisite showing for a *Franks* hearing. Therefore, the Court will overrule Dancy's objections, adopt the R&R, and deny both Dancy's motion to suppress evidence obtained as the result of a search and seizure and Dancy's request for a hearing pursuant to *Franks v. Delaware*.

**BACKGROUND**

While Dancy takes issue with the sufficiency of the witness descriptions in the facts described, neither party disputes the relevant facts. (Def.'s Objs. R. & R. at 1, Mar. 29, 2023, Docket No. 61; Gov't Resp. Opp. Def.'s Objs. R. & R., at 2, Apr. 12, 2023, Docket No. 63.) The Court therefore adopts in full the factual summary contained in the Magistrate Judge's R&R and briefly summarizes facts relevant to Defendants' objections here. (*See* R. & R. at 1–5, Mar. 15, 2023, Docket No. 60.)

**I.   FACTS**

On or about May 27, 2022, an armed robbery was reported to law enforcement at a local grocery store, Towfig Grocery, in St. Paul, Minnesota. (Criminal Mot. Hr'g, Gov't Ex. 1 at 139, Jan. 19, Docket No. 54.) The affidavit describes that a Towfig Grocery employee told officers that a black male customer entered the store, asked for Tylenol packs, pointed a black handgun, and demanded money. (*Id.*) In response, the employee

gave the suspect $240 from the register. (*Id.*) Another witness reported seeing the suspect come through a hole in a wooden fence adjacent to an alley north of the store, enter the store, and then exit the store with money before leaving through the same holed fence. (*Id.* at 6–7.) Law enforcement reviewed the robbery footage, which showed a black male entering the store wearing a covid mask, green T-shirt, dark jeans, and shoes with distinct features. (*Id.* at 7.) The suspect had long dreadlocks with light ends, a widow's peak, and eyebrows that only extend halfway. (*Id.*) The affidavit described that the suspect pointed the gun, received cash from the store employee and exited the store by backing out to the right from the entrance. (*Id.*) Other footage from external surveillance cameras shows a red, two-door Monte Carlo on the scene at the time of the robbery with a license plate that was registered to Dancy. (*Id.* at 8.)

Law enforcement compared Dancy's driver's license photo, his on-file booking photo, and the Towfiq robbery footage and identified the same half-length eyebrows, long dreads that faded to lighter ends, and receding widow's peak hairline. (*Id.*) Dancy's arrest record further noted a tattoo of a heart with writing through its center on his left forearm, which can be seen on the suspect's left arm in the robbery footage. (*Id.*) Additionally, during a routine traffic stop in August 2021, Dancy was stopped while driving the red Monte Carlo with the matching license plate and was observed to have the same long dark dreads with light ends. (*Id.*)

The affidavit contained numerous facts linking Dancy to a 597 Blair Avenue # 3 address (the "Blair address"), the location of the ultimate search warrant execution. These facts included: Dancy's driver's license bearing the Blair address and matching his probation file; law enforcement license plate readers showed nine license plate reader "hits" placing the red Monte Carlo parked near the Blair address, with the most recent "hit" at around the date of the first robbery. (*Id.*) The affidavit further contained information on a second armed robbery at Global Food Mid-Market in St. Paul on June 5, 2022, where an employee reported that a black male wearing black clothing pulled a black handgun and stole approximately $500 in cash before leaving through the north entrance. (*Id.* at 10.) Two additional witnesses reported seeing the suspect get into a red Monte Carlo with plates registered to Dancy and drive away. (*Id.* at 9–10.) Further, upon following the car, the witnesses observed a black male with the same clothing enter the Blair address. (*Id.* at 10.)

Based on the foregoing facts, officers electronically applied for a nighttime search warrant at 12:22am on June 6, 2022 to search the Blair address and the warrant was authorized at 12:27am. (*Id.* at 4, 10.) During the search, officers recovered a 9 millimeter gun with live ammo, Dancy's Minnesota ID and two cell phones, as well as blue and black Air Jordans and a green t-shirt, consistent with the clothing worn by the suspect of the first robbery. (*Id.* at 1.)

II.   **PROCEDURAL HISTORY**

Dancy was indicted on August 4, 2022, for three counts of interference with commerce by robbery, one count of carrying a firearm during and in relation to a crime of violence, and one count of being a felon in possession of a firearm.  (Indictment at 1–3, Aug. 4, 2022, Docket No. 1.)  Dancy subsequently moved to suppress evidence seized during the search, asserting that officers illegally conducted the search before the warrant's issuance and relied on information gathered during the alleged pre-warrant search to secure the warrant.  (Mot. Suppress Evid., Sept. 29, 2022, Docket No. 24; Am. Mot. Suppress Evid. at 2, Dec. 29, 2022, Docket No. 46.)  Dancy amended his motion to make a four corners challenge to the warrant and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), pointing to photos in the discovery file that show a microwave on a kitchen countertop allegedly displaying a time of 10:24 or 10:25, some two hours prior to the warrant's issuance.  (Am. Mot. Suppress at 2.)

The United States opposed the motion and request, arguing that Dancy's arguments are meritless because the relevant photo does not show the time Dancy suggests and body camera footage shows the officers outside of the apartment several minutes after the warrant was signed.  (Gov't Supp. Resp. Opp. Def.'s Pretrial Mots. ("Gov't Supp. Resp.") at 7–8, Jan. 10, 2023, Docket No. 51; Gov't Post-Hearing Resp. Opp. Def.'s Mot. Suppress ("Gov't Post-Hearing Resp.") at 1, Feb. 15, 2023, Docket No. 58.)  The United States further argued that Dancy cannot show that the time of entry had any bearing on the probable cause analysis because the warrant affidavit did not recite facts

that would have been learned inside the apartment. (Gov't Supp. Resp. at 8–9.) Lastly, the United States asserted that the affidavit clearly provides a substantial basis to conclude that evidence related to the robberies would be found in Dancy's apartment and thus probable cause existed. (Gov't Post-Hearing Resp. at 2–3.)

Thereafter, the Magistrate Judge issued a Report and Recommendation, recommending that Dancy's motion to suppress evidence and request for a *Franks* hearing be denied. (*See generally* R. & R.) The Magistrate Judge found that Dancy's four corners challenge to the warrant failed because numerous facts in the warrant identified Dancy and linked him to the Monte Carlo, the first robbery, and the Blair address. (R. & R. at 5–6.) Further, the Magistrate Judge found that Dancy failed to meet his burden to show an alleged illegal entry occurred because he does not clarify what evidence was gathered pre-warrant and subsequently relied on and found that the United States' evidence contradicted Dancy's unsupported assertions. (*Id.* at 8–9.) Lastly, the Magistrate Judge found that Dancy failed to make the requisite strong initial showing for a *Franks* hearing because he has not alleged any deliberate falsehood or reckless disregard for the truth, he has not offered any affidavits or similarly reliable statements containing evidence of the same, and he further failed to identify any specific statements in the challenged affidavit. (*Id.* at 10.) Accordingly, the Magistrate Judge recommended that the Court deny Dancy's motion and request. (*Id.*)

Dancy timely objected to the R&R on both the motion to suppress the evidence and the request for a *Franks* hearing. (*See generally* Def.'s Objs.) Dancy continues to rely on his original arguments that the search warrant application contains intentionally false and misleading statements by law enforcement made with a reckless disregard for the truth and that the warrant application fails to establish probable cause. (*Id.* at 1.) He "specifically" objects that the witness statements do not sufficiently describe Dancy in relation to the robberies, that the officers began searching his apartment before the warrant was signed, and that the warrant application contains false information based on the timing of the warrant. (*Id.* at 1–2.) The United States opposes Dancy's objections. (*See generally* Gov't Resp. Opp. Def.'s Objs. R. & R.).

## DISCUSSION

**I.   STANDARD OF REVIEW**

After an R&R is filed by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2); *accord* 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews "properly objected to" portions of an R&R *de novo*. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat

arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

## II.   ANALYSIS

### A.   Probable Cause

Dancy claims that there was a lack of probable cause to support the search warrant based on the following assertions: the witness statement concerning the first robbery does not describe Dancy in comparison to the individual on the store surveillance footage; the witnesses who spoke to officers following the June 5 robbery did not sufficiently describe Dancy; Dancy was not observed getting in and out of the Monte Carlo, which was parked in an adjacent alley to the robbery location; no statement asserted that anyone identified Dancy at the apartment building the night of the second robbery or that the person observed by witnesses looked like the person from the first robbery, and thus the warrant issuing judge "could not possibly know whether evidence of a crime would be found in the apartment because it was not clear who drove the vehicle or entered the building" as there was no comparison of the persons involved in the first and second robberies. (Def.'s Mem. Supp. Am. Mot. Suppress ("Def.'s Mem."), Feb. 3, 2023, Docket No. 56; Def.'s Objs. at 2.)

The United States argues that the warrant affidavit recited abundant evidence both connecting Dancy to the robberies and establishing that relevant evidence would

likely be found in his apartment, such as noting that a vehicle registered to Dancy and the Blair address was observed at both robberies. (Gov't Resp. Opp. Def.'s Objs. R. & R. at 2.) The United States cites further evidence including that two witnesses followed the vehicle and observed the robber enter the Blair address apartment building, in addition to several visual similarities between Dancy and the suspect captured on video.

Probable cause exists for the issuance of a search warrant if, based on the totality of the circumstances set forth in the application and affidavits, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Johnson*, 528 F.3d 575, 579 (8th Cir. 2008) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, (1983)). The United States Supreme Court has repeatedly made clear that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review" and thus the issuing judge's "determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (internal citation omitted); *see also United States v. Evans*, 4 F.4th 633, 636 (8th Cir. 2021). And ultimately, when reviewing the issuance of a search warrant, the Court must determine whether the judge had a "substantial basis" for finding probable cause. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (quoting *Gates*, 462 U.S. at 238–39).

Here, the warrant application described footage from two robberies in which the Monte Carlo with plates registered to Dancy at the Blair address was observed. While Dancy argues that in the first robbery the eyewitnesses did not specifically identify him,

the suspect is described to have features substantially similar to Dancy. And the description was very detailed, including the long dreadlocks with light ends, the halfway-extended eyebrows and the forearm heart tattoo. Despite Dancy's assertions, these distinct identifiers were not obscured by the covid mask the suspect wore because the mask covered just the mouth and nose. Law enforcement compared these images to Dancy's ID and previous booking images and determined they matched. Therefore, Dancy's argument about specific identification misses the mark. Moreover, eyewitnesses to the second robbery observed a black man fleeing, followed him, and saw him enter the apartment building at the Blair address where Dancy lives. These facts in the warrant application certainly provided a "substantial basis" for the issuing judge to find probable cause because there was enough to suggest that evidence of the robberies would be found in the apartment to which both Dancy and the car were linked. *Caswell*, 436 F.3d at 897.

Thus, the Magistrate Judge did not err in finding that Dancy's four-corners challenge to the warrant fails because the affidavit established a substantial basis to believe evidence of the robberies would be found at the Blair address. Accordingly, the Court will overrule Dancy's objection as to the probable cause claim.

B.   **Warrantless Entry**

Dancy next contends that law enforcement illegally searched his residence at the Blair address before the search warrant was issued. Dancy claims that the June 5 robbery occurred around 10:30 p.m. but it took officers two hours to get a warrant signed, while

the officers were at the Blair address quickly after the robbery and began searching before the warrant was signed. (Def.'s Objs. at 2.) The United States responds that Dancy does not proffer sufficient evidence to show illegal entry because the photo of the microwave, displays 0:24 not 10:24 p.m., as in to show seconds remaining on a cook cycle.[1] (Gov't Supp. Resp. at 7.) Moreover, body cam footage of the officers does not show impropriety with the time of entry. (*Id.* at 8.)

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Flores-Lagonas*, 993 F.3d 550, 559 (8th Cir. 2021) (quoting U.S. Const. amend. IV). "[E]vidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *Id.* (internal citation omitted). The proponent of a motion to suppress evidence on the basis of a Fourth Amendment violation "has the burden of establishing that his . . . Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Kouayara*, 189 F. Supp. 3d 835, 840 (D. Minn. 2016).

Here, the evidence does not conclusively establish that the officers were inside the apartment before the signed warrant, nor does it conclusively rule the possibility out. It is unclear what the time in the picture—0:24—actually means and what time it was meant

---

[1] The Government also raises the possibility that the time on the microwave may not be accurate because the time on home appliances is frequently set to the incorrect time for any number of reasons.

to display, let alone if that time was correct. Still, the body camera footage time stamp supports the United States' assertion that the officers were not inside Dancy's apartment before the warrant was signed. To the extent Dancy is arguing that the officers were gathering evidence outside the apartment while awaiting the signed warrant, Dancy does not identify such evidence.

Dancy provides no evidence in support of his arguments and instead merely offers conclusory allegations, which are insufficient to show that an alleged pre-warrant search occurred or that pre-warrant gathered evidence was used to secure the warrant. The basis for the warrant, as previously noted, is sufficiently substantiated by independent sources and independent evidence. Therefore, the Magistrate Judge correctly held that Dancy failed to meet his burden to prove his Fourth Amendment rights were violated. His objection will thus be overruled, the R&R will be adopted, and the Court will deny Dancy's motion to suppress evidence.

### C.     *Franks* Hearing

Dancy also requests a *Franks* hearing on the ground that the warrant application allegedly contains materially false statements that law enforcement relied on to convince the issuing judge to grant the warrant. (Def.'s Mem. at 1; Def.'s Objs. at 1.) Dancy also points to the time on the microwave, which the Court has already dispensed with as not a reliable indication of the time of day. (Am. Mot. Suppress at 2.) The United States responds that Dancy's request must be denied because the evidence belies his assertions that the officers entered before the warrant was signed, and therefore, he has failed to

make the substantial showing unlawful entry that is necessary. (Gov't Supp. Resp. at 7.) Moreover, Dancy cannot show that the time of entry had a bearing on the probable cause analysis because the facts in the application were not learned inside the apartment. (*Id.* at 8.)

"A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001) (citing *Franks*, 438 U.S. at 171). Thus, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. *Franks*, 438 U.S. at 155–56.

To prevail on a *Franks* claim a defendant must show: (1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit; and (2) that the affidavit's remaining content is insufficient to establish probable cause. The same analysis applies to omissions of fact. A defendant must show: (1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. *Reinholz*, 245 F.3d at 774.

Here, the Magistrate Judge did not err in concluding that Dancy failed to make the requisite showing. Dancy fails to identify what false statements or omissions are in the affidavit, let alone make the connection that they were necessary to the issuing judge's finding of probable cause. *See United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (a defendant must "offer specific allegations along with supporting affidavits or similarly reliable statements" to make this preliminary showing). Plainly, Dancy does not offer specific allegations or provide any supporting affidavits to show that the officers lied or acted with reckless disregard for the truth as it relates to the facts in the warrant application. As to the warrantless entry allegation, not only does Dancy not meet his burden to show illegal entry occurred, the facts recited in the warrant application were not, and could not, have been learned as a result of entry to the apartment. These facts were based on the external investigation of the robberies, video evidence, and an eyewitness account linking Dancy, the Monte Carlo, and the apartment building at the Blair address. Thus, Dancy fails to make a substantial preliminary showing that a *Franks* hearing is necessary or warranted. As such, the Court will overrule Dancy's objection, adopt the R&R, and deny Dancy's request for a *Franks* hearing.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Objections to Magistrate's Report and Recommendations on the Amended Motion to Suppress Evidence from Search and Seizure [Docket No. 61] are **OVERRULED**.

2. The Report & Recommendation [Docket No. 60] is **ADOPTED**.

3. Defendant's Amended Motion to Suppress Evidence from Search and Seizure [Docket No. 46] and request for a hearing pursuant to *Franks v. Delaware* [Docket No. 56] are **DENIED**.

DATED: May 10, 2023
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge